MONTIEL, Judge.
The appellant was 'convicted of manslaughter, in violation of § 13A-6-3, Code of Alabama 1975, as charged in the indictment. The appellant was sentenced to 10 years’ imprisonment. The sentence was suspended and the appellant was placed on supervised probation for up to three years.
In December 1990, the Montgomery Police Department investigated the death of the victim, two-year old Jabriel Rogers. The victim had suffered severe burns on the lower one-half of her body. The state’s evidence tended to show that the victim had been lowered into water of a temperature of at least 130 degrees and had remained in the water for up to 30 seconds.
On Saturday, December 15, 1990, Ms. Mary Rogers, the victim’s mother had left her children, including the victim, in the care of the appellant while she went shopping. The record indicates that the appellant kept Rogers’s children at her apartment from 11:30 a.m. until around 8:30 p.m. that day. The state’s evidence showed that the appellant had kept the children on a number of previous occasions. Rogers testified that the appellant, who lived with her “off and on,” acted like he loved her children and, in fact, appeared to treat the victim as though she were “special.”
The testimony indicated that on Saturday, the appellant had been watching television when the victim had a bowel movement. In a statement he gave to police, the appellant stated that he told the victim’s four-year old sister, Crystal, to bathe the victim. The appellant further told the police that while the two children were in the bathroom, he heard the victim scream and cry. According to the appellant, when the victim returned to the room where he was watching television, the victim acted as though nothing had happened. However, the appellant admitted that he noticed that it appeared that the first layer of the victim’s skin on her legs was missing.
When Ms. Rogers returned to her apartment from shopping, the victim was asleep. She testified that it was unusual for the victim to be asleep so early in the evening. She testified that the appellant had commented that the victim had merely been sleepy. No mention of the incident was made by either the appellant or the victim’s sisters. Ms. Rogers first noticed the burns on Sunday morning. On Sunday, she asked the appellant what had happened. The appellant replied that he did not know but that it must have happened when “I told Crystal to bathe her.”
On Monday, Ms. Rogers returned to work and the appellant kept her children. She stated that she did not take the victim to a doctor because she felt that if she did *772 she would experience trouble from the Department of Human Resources because of the nature of the victim’s burns. Furthermore, she testified that she asked the appellant, rather than the regular baby-sitter, to keep the children because she did not want the sitter to notice the victim’s condition. She attempted to treat the victim on her own.
Ms. Rogers testified that although the appellant neither encouraged her to take nor discouraged her from taking the victim to a doctor, the appellant had commented that the victim’s burns did not appear serious. On Tuesday morning, Ms. Robinson found the victim dead in the apartment.
Dr. James Lauridson, a state medical examiner with the Alabama Department of Forensic Sciences, testified that the cause of the victim’s death was second- and third-degree burns covering the victim’s stomach and legs. The burns led to pneumonia, dehydration, and infection. Dr. Lauridson also testified that the victim had bruises on the front and back of her head and that these bruises occurred about the same time as the burns and were caused by a blunt instrument. Furthermore, Lauridson stated that the burns were characteristic of hot water immersion burns and that he believed that victim had been lowered into the hot water and that, as her feet touched the water, she jerked both legs up to her stomach. Lauridson’s testimony indicated that the victim had been held in the water for up to 30 seconds. Moreover, the state’s evidence showed that the victim could have survived if she had received proper medical treatment.
On appeal, the appellant contends that the state failed to prove a prima facie case of manslaughter. Specifically, the appellant argues that he was under no legal duty to furnish or provide medical assistance to the victim in this case. We cannot agree with the appellant’s claim. The concept of duty is irrelevant to the charge of manslaughter. Section 13A-6-3, Code of Alabama 1975, provides:
“(a) A person commits the crime of manslaughter if:
“(1) He recklessly causes the death of another person, or....”
Under § 13A-2-2(3), Code of Alabama 1975, a person acts recklessly
“when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstances exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.”
The appellant’s conviction for manslaughter was founded largely upon circumstantial evidence. We believe that “the state presented sufficient circumstantial evidence from which a jury could reasonably find that the evidence excluded every other reasonable hypothesis but that of guilt.” Perkins v. State, 580 So.2d 4, 6 (Ala.Crim.App.1990).
A person commits the crime of manslaughter if he recklessly causes the death of another. Clearly, in this case, the appellant acted recklessly. The appellant was no mere stranger to the victim. Rather, he spent much time around the victim, the victim’s mother, and her siblings. He lived with them “off and on.” There was testimony that he even treated the victim as though she were “special.”
The appellant was caring for the victim and her siblings on the day the victim was burned. He also stayed with the children on the following Monday when the mother went to work. Evidence tended to show that the appellant baby-sat the children on Monday because the mother did not want the regular sitter to see the victim’s condition. The appellant was fully aware that the victim had been burned and later told Montgomery police that on the night she was burned he noticed that the first layer of the victim’s skin was missing. Despite the fact that he noticed the victim’s condition on that Saturday night, the appellant failed to mentioned the burn to the victim’s mother when she returned from shopping. In fact, there is evidence indicating that the appellant later told the victim’s mother that the bums did not appear serious. The ap *773 pellant neither encouraged nor discouraged the victim’s mother to seek medical care for the victim.
This victim suffered severely from the time of her bum until her tragic death on Tuesday morning. The appellant knew of the victim’s condition and, based upon his “special” relationship with the victim and her family, should have sought assistance. Under the unfortunate circumstances of this case, the appellant’s behavior was simply a gross deviation from the standard of conduct of a reasonable person. The appellant was aware of and consciously disregarded “a substantial and unjustifiable risk” that death would occur. Section 13A-2-2(3), Code of Alabama 1975.
Furthermore, it is clear that the appellant’s reckless behavior in disregarding the seriousness of the victim’s condition and the inherent risk to the child’s life created by that serious condition caused the victim’s death. We agree with the trial court that the evidence was sufficient to show that the appellant committed the crime of manslaughter.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.