BOLIN, Justice.
The State of Alabama petitioned this Court for a writ of certiorari to review *1057 whether the Court of Criminal Appeals erred in reversing the trial court’s judgment convicting Eric Rodney Hammonds of one count of reckless murder and two counts of second-degree assault. We granted certiorari review. For the reasons discussed below, we reverse the judgment of the Court of Criminal Appeals.

Facts and Procedural History

The Court of Criminal Appeals set out the following facts:
“In case number CC-04-3840, the appellant, Eric Rodney Hammonds, was indicted for reckless murder pursuant to § 13A-6-2(a)(2), Ala.Code 1975, for the death of Rita Michelle Broglen. In case number CC-04-3841, he was indicted for first-degree assault pursuant to § 13A-6-20 (a)(3), Ala.Code 1975, with regard to injuries sustained by Stephanie Norman. In case number CC-04-3842, he was indicted for first-degree assault pursuant to § 13A-6-20(a)(3), Ala.Code 1975, with regard to injuries sustained by Elisha Danielle Allison. Finally, in case number CC-04-3843, he was indicted for leaving the scene of an accident pursuant to § 32-10-1, Ala.Code 1975. The jury found [Hammonds] guilty of reckless murder pursuant to § 13A-6-20 (a)(2), Ala.Code 1975, in case number CC-04-3840 and of leaving the scene of an accident in ease number CC-04-3843. In case numbers CC-04-3841 and CC-04-3842, the jury found him guilty of the lesser included offenses of second-degree assault pursuant to § 13A-6-21 (a)(3), Ala.Code 1975. The trial court sentenced [Hammonds] to serve consecutive terms of ninety-nine years in prison on the reckless murder conviction, ten years in prison on each of the second-degree assault convictions, and one year in the Mobile County Metro Jail on the leaving the scene of an accident conviction. [Hammonds] filed a ‘Defendant’s Motion for Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, Motion for New Trial,’ which the trial court denied after conducting a hearing. This appeal followed.
“The State presented evidence that, during the evening of March 7, 2004, and the early morning hours of March 8, 2004, [Hammonds] was drinking at Jewel’s Lounge; that [Hammonds] left Jewel’s Lounge and got into his Nissan truck; that, as [Hammonds] was leaving the parking lot, he hit a vehicle that belonged to Michael Havard; that Michael Havard told [Hammonds] that he had hit his vehicle; and that [Ham-monds] [ran a red light as he left the parking lot], and proceeded onto Lott Road. The State also presented evidence that [Hammonds] was traveling south on Lott Road; that Bobby Smith and his wife were in a vehicle that was traveling north on Lott Road; that Stephanie Norman was driving a vehicle that was traveling north on Lott Road behind Smith’s vehicle; that Rita Michelle Bro-glen, Elisha Danielle Allison, Cassie Peacock, and Sheila Patton were in the vehicle with Norman; that, at some point, [Hammonds] crossed the center line of Lott Road and was in the northbound lane traveling south; that Smith saw [Hammonds’s] vehicle in his lane and swerved off of the road; that [Ham-monds’s] vehicle hit the back of Smith’s vehicle; that Norman saw Smith’s vehicle swerve off of the road and then saw headlights in her lane; that Norman tried to swerve out of the way; and that [Hammonds’s] vehicle hit the vehicle Norman was driving. The State further presented evidence that Broglen died instantaneously as a result of the injuries she received during the accident; that Allison’s pelvis was fractured; and that Norman’s left heel was crushed. Finally, the State presented evidence *1058 that [Hammonds’s] blood alcohol content at the time of the accident was at least 0.195.”
Hammonds v. State, 7 So.3d 1038, 1039-40 (Ala.Crim.App.2006).
Hammonds raised several arguments on appeal, including an argument that his conviction for reckless murder was inconsistent with his convictions for second-degree assault. On April 28, 2006, the Court of Criminal Appeals issued an opinion holding that the convictions were inconsistent because, it reasoned, reckless murder is murder committed under circumstances manifesting an extreme indifference to human life while recklessly engaging in conduct that created a grave risk of death to another person whereas Hammonds’s second-degree-assault convictions were based on recklessness alone. Hammonds, supra. The Court of Criminal Appeals also held that the offenses of reckless murder and second-degree assault were mutually exclusive because they “were based on one course of conduct and one set of circumstances.” 7 So.3d at 1048. The court concluded that because the jury found Hammonds guilty of the lesser-included offense of second-degree assault, it could not find him guilty of reckless murder. The Court of Criminal Appeals reasoned:
“The jury found [Hammonds] guilty of the reckless murder of Broglen pursuant to § 13A-6-20 (a)(2), Ala.Code 1975, and guilty of the lesser included offenses of second-degree assault with regard to the injuries sustained by Norman and Allison. All three of those convictions arose from the automobile accident in which Broglen was killed and Norman and Allison were injured, and all three of the victims were in the same vehicle at the time of the accident. Therefore, all three convictions were based on one course of conduct and one set of circumstances.
“By finding [Hammonds] guilty of reckless murder, the jury found that [Hammonds] had recklessly engaged in conduct that created a grave risk of death to another person and that [Ham-monds] had acted under circumstances manifesting extreme indifference to human life. However, by finding [Ham-monds] guilty of the lesser included offense of second-degree assault in case numbers CC-04-3841 and CC-04-3842, the jury implicitly acquitted [Hammonds] of first-degree assault in both of those cases. See Ex parte Dorsey, 881 So.2d 533, 538 (Ala.2003) (holding that ‘ “[t]he conviction for a lesser included offense is an implied acquittal as to the greater offense. Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).” Ex parte Ziglar, 675 So.2d 543, 545 (Ala.Crim.App.1996).’). Thus, although the jury found that [Hammonds] acted recklessly in case numbers CC-04-3841 and CC-04-3842, it also implicitly found that he did not act under circumstances manifesting an extreme indifference to human life and that he did not engage in conduct that created a grave risk of death to another person. Therefore, the jury found two distinct degrees of culpability for one course of conduct that arose from one set of circumstances, and the verdict in case number CC-04-3840 was inconsistent with the verdicts in case numbers CC-04-3841 and CC-04-3842. Cf. Carter [v. State, 843 So.2d 812 (Ala.2002) ]. Because the jury implicitly acquitted [Hammonds] of acting under circumstances manifesting an extreme indifference to human life and of engaging in conduct that created a grave risk of death to another in case numbers CC-04-3841 and CC-04-3842, he could not be found guilty of acting under circumstances manifesting an extreme indifference to human life and of engaging in *1059 conduct that created a grave risk of death to another in case number CC-04-3840. See Heard, v. State, 999 So.2d 982 (Ala.Crim.App.2002) (opinion on remand from Supreme Court); Dorsey, supra. Consequently, [Hammonds]’s reckless murder conviction must be reversed.
“However, the trial court instructed the jury on the lesser included offense of reckless manslaughter pursuant to § 13A-6-3(a)(l), Ala.Code 1975, and the jury found that [Hammonds] had acted recklessly in case numbers CC-04-3841 and CC-04-3842. Also, the evidence presented during the trial clearly supported a conviction for the lesser included offense of reckless manslaughter. ‘Appellate courts have the “inherent authority to reverse a conviction while at the same time ordering an entry of judgment on a lesser included offense.” Edwards v. State, 452 So.2d 506, 507 (Ala.Crim.App.1983), aff'd, 452 So.2d 508 (Ala.1984).’ Campbell v. State, 555 So.2d 252, 254 (Ala.Crim.App.1989). Accordingly, we remand this case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of reckless manslaughter and impose a sentence for that offense.”
7 So.3d at 1048-49 (footnote omitted).
After remand, the State filed an application for rehearing, which the Court of Criminal Appeals overruled. On November 3, 2006, the State filed a petition for a writ of certiorari, arguing that this Court should revisit and overrule its decision in Ex parte Dorsey, 881 So.2d 533 (Ala.2003), because the Court of Criminal Appeals tacitly relied upon Dorsey to conclude that Hammonds had preserved the argument that the verdicts convicting him of reckless murder and second-degree assault were mutually exclusive, even though Ham-monds failed to object to the verdicts until he filed his written motion for a new trial. The State also argued that the Court of Criminal Appeals’ opinion conflicted with United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), Ex parte Dorsey, supra, Carter v. State, 843 So.2d 812 (Ala.2002), and Grikis v. State, 552 So.2d 187 (Ala.Crim.App.1989), regarding mutually exclusive verdicts.
While the State’s petition for a writ of certiorari was pending, this Court released Heard v. State, 999 So.2d 992 (Ala.2007). In Heard, the defendant was indicted on two counts of capital murder (Count I, murder committed during the course of a robbery, and Count II, murder committed by the use of a deadly weapon fired outside a dwelling) for the death of one victim. He was convicted of felony murder as a lesser-ineluded offense under Count I and of capital murder under Count II. The Court of Criminal Appeals reversed the defendant’s capital-murder conviction and sentence reasoning that, based on Dorsey, the conviction for capital murder was inconsistent with the conviction for felony murder. This Court granted the State’s petition for the writ of certiorari and reversed the judgment of the Court of Criminal Appeals, holding that although the verdicts were inconsistent, such inconsistent verdicts are permissible in a criminal trial, even though mutually exclusive verdicts are not. Although the State in Heard had raised the issue of when the argument that verdicts are mutually exclusive must be raised, we did not address that issue because the verdicts in that case were not mutually exclusive. Heard, 999 So.2d at 1005 n. 4. Additionally, this Court in Heard overruled that portion of Dorsey that held that verdicts finding a defendant guilty of both felony murder and capital murder were legally inconsistent because one murder cannot be both unintended and intended (i.e., felony murder does not require proof that the defendant unintentionally killed the victim, only that the de *1060 fendant intentionally committed the underlying felony).
We granted the State’s petition for a writ of certiorari in the present case in order to determine if the Court of Criminal Appeals’ opinion conflicts with this Court’s holding in Heard.

Analysis

The dispositive issue is whether the verdicts convicting Hammonds of both reckless murder and second-degree assault are inconsistent verdicts or mutually exclusive verdicts. In Heard, supra, this Court clarified the difference between verdicts that are merely inconsistent and ones that are mutually exclusive when a defendant is convicted of multiple crimes:
“Heard was found guilty of more than one offense based on crimes against one victim.
[[Image here]]
“Confusion exists throughout Alabama courts over the difference between inconsistent verdicts and mutually exclusive verdicts. ‘The general rule is that there need be no rational compatibility between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other. Conway v. State, 489 So.2d 641, 642 (Ala.Cr.App.1986) .... ’ Grikis v. State, 552 So.2d 187, 187 (Ala.Crim.App.1989). This seemingly straightforward rule has been somewhat difficult to apply because of confusion over the meaning of the terms ‘inconsistent verdicts’ and ‘mutually exclusive verdicts.’
[[Image here]]
“... [M]utually exclusive verdicts are the result of two positive findings of fact that cannot logically coexist. In other words, it is legally impossible for the State to prove the elements of both crimes. In order to determine whether the guilty verdicts are mutually exclusive as a matter of law, the alleged underlying offenses or acts must be carefully scrutinized. The two guilty verdicts are not mutually exclusive if no element of one crime necessarily negates an element of the other.
“Mutually exclusive verdicts exist when a guilty verdict on one count logically excludes a guilty verdict on another count. In contrast, inconsistent verdicts can exist where there is a verdict of guilty and another of not guilty, as when there are two guilty verdicts that are not mutually exclusive. Inconsistent criminal verdicts are permissible; mutually exclusive verdicts are not.
“There has been much confusion as to whether the verdicts returned against Heard were mutually exclusive or merely inconsistent. Heard was convicted of both capital murder and felony murder. According to Alabama law, a defendant must have the intent to kill in order to be found guilty of a capital offense. § 13A-5M:0(b), Ala.Code 1975; Ex parte Woodall, 730 So.2d 652, 657 (Ala.1998) (‘No defendant can be found guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony-murder doctrine.’). Felony murder, on the other hand, does not require the specific intent to kill; it requires only the intent to commit the underlying felony. § 13A-6 — 2(a)(3), Ala.Code 1975; Mitchell v. State, 706 So.2d 787 (Ala.Crim.App.1997). The absence of an intent to kill, however, is not necessarily an element of felony murder, as contrasted with the intent to kill, which is an element of capital murder.
“In other words, a felony-murder conviction does not require proof that the defendant unintentionally killed the victim, only that the defendant intended to *1061 commit the underlying felony. Therefore, it is possible that a defendant intended to kill the victim (the element necessary for the capital conviction) while at the same time intending to commit an underlying felony (the element necessary for the felony-murder conviction). Therefore, the most that can be said of the verdicts finding Heard guilty both of capital murder and of felony murder is that they may be merely inconsistent. These two verdicts are not mutually exclusive; they do not contain mutually exclusive essential elements.
“Because these verdicts are not mutually exclusive, the verdicts should stand; ‘[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation of inquiry into such matters.’ Dunn [v. United States], 284 U.S. [390,] 394 [ (1932) ].”
999 So.2d at 997-1005.
“ ‘Inconsistency' between verdicts is generally understood to mean some logical impossibility or improbability implicit in the jury’s findings on several indictments or informations tried together or as between several counts of a single criminal accusation without severance of the counts.” State v. Purdie, 144 Idaho 911, 174 P.3d 881, 883 (Ct.App.2007). An inconsistent verdict on different counts' of a multiple-count indictment is permissible. A jury verdict on each count is independent; a verdict of either conviction or acquittal of one has no effect or bearing on another. A jury’s verdict may be inconsistent or even illogical but nonetheless permissible if it is supported by sufficient evidence. The rationale for allowing inconsistent verdicts is
“(1) there is no way to know why the jury rendered an inconsistent verdict, and therefore such verdicts must be upheld in the interest of protecting lenity; (2) since the government cannot appeal inconsistent acquittals, it would be unfair to allow a defendant to appeal inconsistent convictions; and (3) the requirement of a sufficiency of the evidence review on appeal prevents any harm that could result from an inconsistent verdict.”
State v. Purdie, 174 P.3d at 884 (citing United States v. Powell, 469 U.S. 57, 65-69, 105 S.Ct. 471 (1984) (footnote omitted)). This Court will not disturb guilty verdicts on the basis of apparent inconsistencies so long as there is sufficient evidence to support the verdicts. However, mutually exclusive verdicts are contradictory and cannot be reconciled. Verdicts are mutually exclusive if the existence of any of the elements of one offense negates the existence of any of the elements for another offense of which the defendant also stands convicted.
In the present case, Hammonds was indicted for reckless murder, which is defined as murder committed “[u]nder circumstances manifesting extreme indifference to human life” by “recklessly en-gag[ing] in conduct which creates a grave risk of death to a person other than himself or herself,” and “thereby causing] the death of another person.” § 13A-6-2(a)(2). He was also indicted on two counts of first-degree assault, which is defined as assault committed “[u]nder circumstances manifesting an extreme indifference to the value of human life,” by “recklessly engaging] in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person.” § 13A-6-20(a)(3). However, Hammonds was ultimately convicted of reckless murder and second-degree assault arising out of the automobile accident that killed one victim and injured two others. Although three *1062 victims were involved, only one course of conduct was involved (Hammonds’s driving his automobile while he was under the influence of alcohol), and we must now determine whether the verdicts finding Hammonds guilty of reckless murder and second-degree assault arising from this one course of conduct are mutually exclusive or merely inconsistent.
With regard to reckless murder, § 13A-6-2(a), Ala.Code 1975, provides:
“(a) person commits the crime of murder if he or she does any of the following:
[[Image here]]
“(2) Under circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.”
With regard to second-degree assault, § 13A-6-21(a)(3), Ala.Code 1975, provides:
“(a) person commits the crime of assault in the second degree if the person does any of the following:
[[Image here]]
“(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.”
The Court of Criminal Appeals stated in King v. State, 505 So.2d 403, 407 (Ala.Crim.App.1987), with regard to reckless murder:
“Section 13A-6-2(a)(2) requires the prosecution to prove conduct which manifests an extreme indifference to human life, and not to a particular person only. Its gravamen is the act of recklessness] by engaging in conduct which creates a grave or very great risk of death under circumstances ‘manifesting extreme indifference to human life. ’ What amounts to ‘extreme indifference’ depends on the circumstances of each case, but some shocking, outrageous, or special heinousness must be shown. Commentary to § 13A-6-2(a)(2); Northington [v. State, 413 So.2d 1169 (Ala.Crim.App.1981) ]. A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk. § 13A-2-2(3). ‘The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.’ Id. To bring appellant’s conduct within the murder statute, the State is required to establish that his act was imminently dangerous and presented a very high or grave risk of death to others and that it was committed under circumstances which evidenced or manifested extreme indifference to human life. The conduct must manifest extreme indifference to human life generally. Ex parte McCormack, [431 So.2d 1340 (Ala.1983) ]; Northing-ton, supra. The crime charged here differs from intentional murder in that it results not from a specific, conscious intent to cause the death of any particular person, but from an indifference to or disregard of the risks attending appellant’s conduct.”
(Emphasis added.)
The Court of Criminal Appeals here concluded that the jury rejected a finding that Hammonds acted under circumstances manifesting an extreme indifference to human life when it found Hammonds guilty of the lesser-included offense of second-degree assault instead of first-degree assault as charged. We disagree. A finding that Hammonds was guilty of reckless murder required that the jury find that Hammonds “1) consciously disregarded] the known substantial and unjustifiable risks to the public at large that were asso- *1063 dated with driving his vehide on the public roads while under the influence of alcohol; 2) [drove] his vehicle while under the influence of alcohol; 3) in doing so, ereat[ed] a grave risk of death to someone other than himself; and 4) thereby causfed] the death of .... another person.” Hammonds v. State, 7 So.3d at 1052-53 (Shaw, J., concurring in part and dissenting in part). Second-degree assault required that the jury find that Ham-monds 1) consciously disregarded the known substantial and unjustifiable risks to the public at large that are associated with driving his vehicle on the public roads while under the influence of alcohol; 2) drove his vehicle while under the influence of alcohol; and 3) thereby caused serious physical injury to another person by means of a deadly weapon or dangerous instrument. At most, the verdicts have some factual inconsistency in that the jury found that Hammonds acted under circumstances manifesting an extreme indifference to human life by creating a grave risk of death to his murder victim, but not to his two assault victims. As Judge Shaw points out, this inconsistency could possibly be attributed to confusion between language in the indictment and the trial court’s jury instructions.
“Consistency in the verdict is not necessary. Each count in the indictment is regarded as if it was a separate indictment.... That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot by upset by speculation or inquiry into such matters.”
Dunn v. United States, 284 U.S. 390, 393-94, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

Conclusion

The judgment of the Court of Criminal Appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., recuses herself.